UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

PETER MEEHAN, ROBERT BELL, DIANE
JUDKINS, MICHAEL MCCORRY, STEPHEN
MERCURIO, RICHARD MEYER, and JUDY
YOUNG,

                   Plaintiffs,

      -v.-

ATLANTIC MUTUAL INSURANCE COMPANY,
ATLANTIC MUTUAL INSURANCE COMPANY
RETIREMENT PLAN,

                Defendants.
_____

**MEMORANDUM
AND ORDER**
06-CV-3265 (DRH) (ARL)

**APPEARANCES:**

**For the Plaintiffs:**
**Law Offices of David L. Trueman, P.C.**
221 Mineola Boulevard
Mineola, New York 11501
By: David L. Trueman, Esq.

**For the Defendants:**
**Groom Law Group, Chartered**
1701 Pennsylvania Avenue, N.W.
Washington D.C.  20006
By: Michael J. Prame, Esq.
    Lonie A. Hassel, Esq.
    Christina M. Crockett, Esq.

**HURLEY, Senior District Judge:**

        Plaintiffs Peter Meehan, Robert Bell, Diane Judkins, Michael McCorry, Stephen

Mercurio, Richard Meyer, and Judy Young ("Plaintiffs") bring this action seeking to recover

payment of a "Social Security Supplement" ("Supplement") benefit under their employer's

benefit plan.  They argue, inter alia, that the plan was improperly amended to eliminate the

Supplement.  Both Plaintiffs and defendants Atlantic Mutual Insurance Company (the

"Company") and Atlantic Mutual Insurance Company Retirement Plan (the "Plan") (collectively, "Defendants") have moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons stated below, both motions are granted in part and denied in part.

## BACKGROUND

The material facts, drawn from the Complaint and the parties' Local 56.1 Statements, are undisputed unless otherwise noted.

Plaintiffs were employees of the Company until March 31, 2004. According to Defendants, the Company sold the business unit in which Plaintiffs worked to OneBeacon Insurance Group, Ltd. ("OneBeacon") on April 1, 2004. Before the sale, to prevent the loss of employment for its employees, including Plaintiffs, the Company negotiated agreements with OneBeacon to hire Company employees displaced by the sale. When the Company's operations were sold to OneBeacon, Plaintiffs began employment with OneBeacon.[1]

The Company established and maintained the Plan to provide retirement benefits to its eligible employees. The Plan is a defined benefit pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. At retirement, participants in the Plan are entitled to receive a regular retirement benefit based on specified formulas in the Plan. In addition to the normal retirement benefit, certain participants who retire at or after age 55, but before age 62 are entitled to receive the Supplement. The Supplement is

---

[1] It is unclear from the record exactly when Plaintiffs began their employment with OneBeacon. The record does reflect, however, that Plaintiffs received and accepted offers of employment from OneBeacon by February 25, 2004 (R. Docs. 5-11), and terminated employment with the Company on March 31, 2004 (Pls.' Rule 56.1 Stmt. ¶ 1; Defs.' Counter-Stmt. ¶ 1.)

an estimate of the Social Security benefit a retired participant could receive beginning at age 62, and is paid to eligible retirees from the date of retirement until the month prior to attaining age 62. According to Defendants, the purpose of the Supplement is to provide a retiree with additional retirement income during the period between the date the participant retires and the date he or she becomes eligible to receive a Social Security benefit.

The Plan gives the plan administrator, the Employee Benefit Committee, "full and absolute discretion and authority, to take all action and to make all decisions that shall be necessary or proper in order to interpret and carry out the provisions of the Plan" and "to construe the Plan and to determine all questions of fact that may arise . . . including the discretionary authority to interpret the terms of the Plan and to decide all questions concerning the eligibility of any person to participate in the Plan." (R. Doc. 1 at 125-26.)[2]

On November 3, 2003, the Company sent all employees a document entitled "Notice of Retirement Plan Changes/Summary of Material Modifications." (R. Doc. 23 at 275.) This document provided that

> Effective January 1, 2004, the Plan will be amended to . . . (2) eliminate the Social Security supplement, except for participants who are eligible for the benefit on 12/31/2003. Eligible participants are those who had five years of vesting service as of June 30, 1997 (i.e., who were hired prior to July, 1992) and who are at least age 55 as of 12/31/2003 (i.e., whose birthdate is 12/31/1948 or earlier).

(*Id.*) It further provided that "[f]or those who remain eligible, more information regarding the Social Security supplement is contained in the Plan's SPD [Summary Plan Description]." (*Id.* at 279.) As of the date of this notice, all Plaintiffs met the requirements for receipt of the

---

[2] References to "R." refer to the administrative record filed in this case.

Supplement as stated in the SPD referenced above.

On February 9, 2004, the Employee Benefits Committee considered whether employees who were being "transferred" from the Company to OneBeacon or a private law firm should be eligible for the Supplement. According to the minutes of the meeting, the Committee determined that

> Because these employees have continuing employment as a result of [the Company's] efforts to place [its] business and the employees with continuing entities, it was determined that these employees were not retiring as intended under the terms of the Plan. It was recommended and approved that those employees whose employment continues as a result of the transfer to One[]Beacon or to a law firm would not be eligible for the Social Security Supplement. *The Plan will be amended to this effect with an effective date of February 1, 2004.*

(R. Doc. 4.) (emphasis added)

Thereafter, on February 25, 2004, the Company notified Plaintiffs via e-mail that by accepting a job offer from OneBeacon, they would "not be eligible to receive the Social Security Supplement" from the Plan. (*Id.* Docs. 5-11.) In response to the February 25, 2004 e-mail, one of the Plaintiffs, Rick Meyer, asked for clarification stating "I understand [the Company's] position is that I and others who move to OneBeacon are not eligible for the social security supplement. If we were not going to One[]Beacon, but rather quit [the Company] and went to work elsewhere, would we be eligible for the supplement?" (*Id.* Doc. 12.) A Company representative responded "Yes, that is correct. If you were to quit [the Company] and then go to work for another company, you would be eligible to receive the Supplement." (*Id.*)

The Company formally documented and signed the 2004 amendment on May 12, 2004, effective retroactively as of February 1, 2004. Plaintiffs were not notified of the May 12th

-4-

adoption because "[t]he Plan administrator considered the February 25, 2004 notice to the Plaintiffs regarding the amendment of the Supplement to satisfy the requirement to provide notice of such amendment . . . ." (Second Decl. of Martha Van Hise, dated June 13, 2007, ¶ 3.)

Subsequent to termination of their employment with the Company, Plaintiffs requested payment of the Supplement. The Plan denied their requests. On August 30, 2004, Plaintiffs appealed. This appeal was denied by the Company's Employee Benefit Committee on October 29, 2004. Having exhausted their administrative remedies, Plaintiffs initiated the instant lawsuit on July 5, 2006.

## DISCUSSION

### I.    *Summary Judgment Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

**II.**     *The Arbitrary and Capricious Standard of Review Applies to the*
             *Company's Denial of Plaintiffs' Claim for Payment of the Supplement*

Before reaching the merits of the parties' arguments regarding the Company's

decision to deny Plaintiffs the Supplement, the Court must first address the threshold issue of

what standard of review applies to the Company's determination.  In *Firestone Tire and Rubber*

*Co. v. Bruch*, the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B)

is to be reviewed under a de novo standard unless the benefit plan gives the administrator or

fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of

the plan."  489 U.S. 101, 115 (1989); *see also Kinstler v. First Reliance Standard Life Ins. Co.*,

181 F.3d 243, 249 (2d Cir. 1999).  If such discretion is given, a district court must review the

administrator's denial of benefits deferentially, and may reverse only if the arbitrator's decision

was arbitrary and capricious.  *See Kinstler*, 181 F.3d at 249.

Plaintiffs concede that the Plan grants the Company "discretionary authority to

interpret the terms of the Plan and to decide all questions concerning the eligibility of any person

to participate in the Plan."  (R. Doc. 1 at 125-26.)  Nevertheless, they argue that de novo review

is appropriate under an exception to the arbitrary and capricious rule which applies when a

plaintiff demonstrates that that administrator had an actual conflict of interest and that such

conflict in fact "affected the reasonableness of the administrator's decision."  *Whitney v. Empire*

*Blue Cross & Blue Shield*, 106 F.3d 475, 477 (2d Cir. 1997) (citations and internal quotation

marks omitted).  The burden of proof on these two requirements falls to the plaintiff.  *See*

*Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir. 2000).  "If the court finds that the

administrator was in fact influenced by the conflict of interest, the deference otherwise accorded

the administrator's decision drops away and the court interprets the plan de novo."  *Sullivan v.*

*LTV Aerospace & Defense Co.*, 82 F.3d 1251, 1256 (2d Cir. 1996). If the plaintiff cannot carry this burden, any conflict the administrator has is simply one more factor to be considered in determining whether the challenged decision was arbitrary and capricious. *Pulvers*, 210 F.3d at 92.

Here, Plaintiffs argue that the Company operated under an inherent conflict of interest in making its determination because: (1) it had a financial interest in the outcome of the Supplement decision as "the Plan funds the Supplement from its own revenues" (Pls.' Mem. in Supp. at 4), and (2) "the Plan was in fact influenced by the conflict of interest." (*Id.*) With respect to the latter, Plaintiffs contend that

> such influence can be inferred from the Plan's conduct which included a blatantly incorrect reading of § 15.1 [of the Plan], the failure to amend the Plan in a timely manner so that any amendment would be in effect when Plaintiffs accepted employment from OneBeacon, the Plan's documents indicating Plaintiffs were eligible for the Supplement, and the Plan's failure to provide any notification of the change in Plan benefits in violation of ERISA regulations.

(*Id.* at 4-5.) The Court finds Plaintiffs' arguments to be without merit.

The Second Circuit has repeatedly held that the fact that a defendant "served as both plan administrator and plan insurer, although a factor to be weighed in determining whether there has been an abuse of discretion, is alone insufficient as a matter of law to trigger stricter review." *Pulvers*, 210 F.2d at 92 (citation and internal quotation marks omitted). Therefore, Plaintiffs' allegations that the Company had a conflict of interest solely because of its financial interest does not justify application of a de novo standard of review.

As for Plaintiffs' claims of actual bias, Plaintiffs mistakenly conflate the Company's denial of their claims with actual evidence of bias. In other words, Plaintiffs'

argument is that because the Company's decision was unreasonable, it must have been influenced by a conflict of interest. The Second Circuit, however, requires a plaintiff to show that "the administrator was *in fact* influenced by the conflict of interest." *Id.* (emphasis in original) (citation and internal quotation marks omitted). Aside from speculation, Plaintiffs point to no evidence that the conflict of interest in fact affected the Company's decision. Accordingly, the Court finds that the arbitrary and capricious standard of review applies.

Under the arbitrary and capricious standard of review, the Court may overturn a decision to deny benefits only if it is "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Kinstler*, 181 F.3d at 249 (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)). This scope of review is narrow and the Court is not permitted to substitute its own judgment for that of the decision maker. *Pagan*, 52 F.3d at 442.

### III.     *Whether the Company's Denial of Benefits was Arbitrary and Capricious*

Plaintiffs present several arguments in support of their motion and in opposition to Defendants' motion. The Court will address them separately.

#### A.     *Retroactive Amendment to the Plan Was Not Permissible*

Although the amendment eliminating the Supplement with respect to Plaintiffs was declared by the Committee to be effective February 2004, it was not formally adopted by the Board until May 2004. The parties agree that the effective date of the amendment was therefore retroactive. The dispute concerns whether retroactive amendment of the Plan was permissible. The relevant portion of the Plan provides as follows:

> 15.1 Amendment of the Plan. The Company reserves the right . . .
> at any time and from time to time, and *retroactively if deemed
> necessary or appropriate* to meet the requirements of Sections
> 401(a) or 501(a) of the Code and of any similar provisions of

> subsequent revenue laws or the rules and regulations from time to
> time in effect under any of such laws or *to conform with*
> *governmental regulations or other policies*, to modify or amend in
> whole or in part any or all of the provisions of the Plan; <u>provided,</u>
> <u>however</u>, that no such modification or amendment shall . . . (ii)
> deprive any Participant of a previously acquired vested right . . . .

(R. Doc. 1 at 130 (italicized emphases added).)

At issue is the meaning of the term "or other policies." The Committee interpreted section 15.1 "to authorize retroactive amendments as necessary or appropriate to meet *company* policies." (R. Doc. 27 at 302 (emphasis added).) In this regard, Defendants contend the amendment was consistent with the Company's policy, as articulated in the February 25, 2004 e-mails to Plaintiff, that the Supplement "was designed to provide a level income for employees electing to take early retirement who would have no income other than their pension from the time of their retirement to the commencement of their Social Security at age 62." (R. at Docs. 5-11.) For those who accepted jobs at OneBeacon, "[r]ather than the Social Security Supplement, [they would] continue to receive [their] salar[ies] from OneBeacon." (*Id.*) Although the Committee met in February 2004 and decided to amend the Plan effective February 1, 2004 (*id.* doc. 4), Defendants maintain that because the Company's Board, which has the authority to amend the Plan, did not meet at this time, it was necessary to amend the Plan retroactively. The Board met on May 12, 2004 and formally adopted the amendment on that date. (*Id.* Doc. 38.)

Plaintiffs argue that "[t]he Plan's determination that it has the discretion to retroactively amend the Plan as necessary or appropriate to meet company policies is incorrect, unwarranted by the language of Section 15.1, inconsistent with the intent of the provision, and untenable when considered in the context of the Plan."  (Pls.' Mem. in Supp. at 6 (internal citations and quotation marks omitted).)  Specifically, Plaintiffs maintain that the term "other policies" in the phrase "to conform with governmental regulations or other policies" can only be read to refer to governmental policies because it is preceded by a list of government-generated restrictions, viz. Internal Revenue Code provisions, revenue law, rules and regulations under revenue laws, and governmental regulations.  According to Plaintiffs, "[t]he only possible way that 'other policies' could possibly refer to non-governmental policies is if the phrase had read "governmental *policies* or other policies.'" (Pls.' Reply Mem. at 5 n.2 (emphasis added).)

In response, Defendants contend that if "policies" were meant to convey "government policies" only, the Plan would have stated "to conform with government regulations or policies."  Instead, it reads " to conform with government regulations or *other* policies."  (emphasis added).  If Plaintiffs' interpretation was correct, Defendants maintain, the word "other" would be superfluous.

Under the arbitrary and capricious standard, "[w]here both the plan administrator and a spurned claimant offer rational, though conflicting interpretations of plan provisions, the [administrator's] interpretation must be allowed to control."  *Pulvers*, 210 F.3d at 92-93 (citation and internal quotation marks omitted); *see also Tocker v. Philip Morris Cos.*, 470 F.3d 481, 489 (2d Cir. 2006) ("Where the plan participant and the plan administrator offer two competing yet reasonable interpretations of [the plan], then [we] must accept that offered by the

administrators.") (citation and internal quotation marks omitted).  "Nevertheless, where the

administrator impose[s] a standard not required by the plan's provisions, or interpret[s] the plan

in a manner inconsistent with its plain words, . . . [its] actions may well be found to be arbitrary

and capricious."  *Pulvers*, 210 F.3d at 93 (internal quotation marks and citation omitted).

After reviewing the Plan language, as well as the parties' respective

interpretations, the Court finds that Defendants' interpretation of the Plan is unreasonable.

Section 15.1 provides that "[t]he Company reserves the right" to retroactively amend the Plan

under the following circumstances:

> (1)    "to meet the requirements of Sections 401(a) or 501(a) of the Code and"
> (2)    "of any similar provisions of subsequent revenue laws" or
> (3)    the rules and regulations from time to time in effect under any of such laws or
> (4)    *to conform with governmental regulations or other policies*,

(R. Doc. 1 at 130 (emphasis added).)  Reading the provision in its entirety, and construing all of

the above-referenced conditions consistently,[3] each condition relates to governmental activities.

The conditions proceed from the most specific (specific Code provisions) to more general

aspects of governmental activities (revenue laws, rules, regulations, and "other policies").  Thus,

in the Court's view, Section 15.1 can only be construed to permit retroactive amendment in

relation to governmental activity and not for the activity or conditions related to another entity,

such as the Company.

The only way to interpret the provision to apply to company policies is if the term

---

[3] *See Perreca v. Gluck*, 295 F.3d 215, 224 (2d Cir. 2005) (plan document "should be read to give effect to all its provisions and to render them consistent with each other").

-12-

"other policies" is divorced from the term "governmental regulations."  Such an interpretation, however, would "leave the term ambiguous and potentially devoid of any meaningful referent." (Pls. Mem. in Supp. at 9.)  Moreover, under such an interpretation, the imprecision of the term "other policies" is wholly inconsistent with the specificity of the remainder of Section 15.1, which particularly prescribes governmental conditions that permit retroactive amendment.

Although it is true, as Defendants contend, that the provision could have stated that retroactive amendment was permitted "to conform with government regulations *or policies*," the Court does not agree that Plaintiff's interpretation renders the word "other" superfluous. Although Section 15.1 identifies all laws, rules and regulations, "this does not encompass the universe of policy enactments."  (Pls.' Reply at 5.)  "The term 'other policies' now accomplishes the task of including all governmental activity and becomes a catch-all phrase including all other policies not already implied" such as an Attorney General opinion or the opinion of a governmental agency not codified as a law, rule or regulation.  (*Id.*)

Finally, there is no language in Section 15.1 providing that the Plan may be amended pursuant to "company policies."  Had the Plan wished to include the phrase "company policies" or even the word "company" in relation to any condition allowing amendment, it certainly could have done so.  Indeed, the term "Company" appears in the first sentence of Section 15.1, viz. "[t]he *Company* reserves the right [to retroactively amend the Plan]."  (R. Doc. 1 at 130 (emphasis added).)  The absence of the word "Company" in the list of conditions which trigger the right to retroactively amend the Plan while the word "Company" is used in the same paragraph for other purposes further renders Defendants' interpretation unreasonable.

In sum, the Court finds that the term "other policies" is related to the prior terms

describing governmental activity and serves solely to extend the reach of that activity. The Court therefore finds that the Committee's interpretation of the Plan to permit retroactive amendments as necessary or appropriate to meet Company policies is arbitrary and capricious.

Defendants contend that "[t]o the extent the Court concludes that retroactive amendment of the Supplement was not permitted under the Plan's terms, the Supplement payable to Plaintiffs should be limited to the retroactive period only, from March through May 2004." (Defs. Mem. in Opp'n at 6.) Plaintiffs do not address this issue.

The Company formally documented and signed the 2004 amendment on May 12, 2004, effective retroactively as of February 1, 2004. Thus, it would appear that given the Court's finding, Plaintiffs would be entitled to receive payment of the Supplement from February 1, 2004 through May 12, 2004. As will be more fully set forth below, the parties are directed to resolve this issue and prepare a proposed judgment accordingly.

**B.**     ***The Supplement Could be Eliminated Via Amendment***

Plaintiffs argue that the Supplement was a "protected" early retirement subsidy that could not be eliminated via amendment. For the reasons that follow, the Court rejects Plaintiffs' argument.

The Plan provides the Company with broad authority to amend the Plan at any time, provided that an amendment may not "deprive any participant of a previously acquired vested right." (Plan § 15.1 (R. Doc. 1 at 130).) This amendment right is limited as follows:

To the extent required under Section 411(d)(6) of

the [Internal Revenue] Code, the Company may not adopt any amendment which would decrease any benefit theretofore accrued by a Participant. For this purpose, any amendment shall be deemed to decrease Accrued Retirement Incomes if the amendment would have the effect of either eliminating or reducing an early retirement benefit or a retirement-type subsidy (*neither of which shall include the social security supplement provided under Section 3A.11(e)*) . . . .

(*Id.* (R. Doc. 1 at 130-31 (emphasis added).)  Thus, the Plan explicitly indicates that the

Supplement is not protected from elimination.  Nonetheless, Plaintiffs argue that the amendment

violated section 411(d)(6) of the Internal Revenue Code and section 204(g) of ERISA, codified

at 29 U.S.C. § 1054(g), which prohibit a Plan from reducing or eliminating certain "protected"

benefits via amendment.

The Internal Revenue Code and ERISA restrict a Plan's right to amend a plan to

eliminate certain protected benefits.  *See* I.R.C. § 411(d)(6); ERISA § 204(g).[4]  Generally,

accrued benefits, early retirement benefits, retirement-type subsidies, and optional forms of

benefit are "protected" benefits that cannot be eliminated by amendment.  Code § 411(d)(6);

ERISA § 204(g).  This rule is referred to as ERISA's anti-cutback rule.  *See Arena v. ABB Power

T & D Co.*, No. IP 99-0391-C-M/S, 2004 WL 826389, at *7 (S.D. Ind. Mar. 4, 2004).  Not all

benefits provided for under a plan are protected under these sections, however.  "Section

411(d)(6) does not provide protection for benefits that are ancillary benefits, . . . or any other

---

[4] ERISA section 204(g) mirrors Internal Revenue Code section 411(d)(6).

benefits that are not described in section 411(d)(6)." 26 C.F.R. § 1.411(d)-3(b)(3)(i). Thus, ancillary benefits may be reduced or eliminated via amendment.

Plaintiffs argue that the Supplement is a protected retirement subsidy that could not be eliminated via amendment. Defendants claim that the Supplement is an unprotected ancillary benefit. The Committee agreed with Defendants and found that the Supplement was not a protected benefit under the governing statutes. Specifically, the Committee cited Treasury Regulation 1.411(d)-4(Q&A-1(d)(3)), which states that "[s]ocial security supplements described in section 411(a)(9), except qualified social security supplements as defined in § 1.401(a)(4)-12"[5] are not protected benefits under section 411(d)(6). 26 C.F.R. § 1.411(d)-4(Q&A-1(d)(3)). The regulations applicable to section 411(a)(9) define a social security supplement as a benefit that:

> (A) Commences before the age and terminates before the age when participants are entitled to old-age insurance benefits, unreduced on account of age, under title II of the Social Security Act, as amended (see section 202(a) and (g) of such Act), and

> (B) Does not exceed such old-age insurance benefit.

*Id.* § 1.411(a)-7(c)(4)(ii). The Committee found that the Supplement, as defined in the Plan, fell within the scope of this definition and thus could be eliminated via amendment. The Court agrees.

**1.     The Supplement Satisfies Subdivision (A) of the Regulatory**

---

[5] Neither party argues that the Supplement is a qualified social security supplement as defined in § 1.401(a)(4)-12.

**Definition for an Unprotected Social Security Supplement**

Subdivision (A) provides that a social security supplement must begin and end before a participant is eligible for unreduced Social Security benefits. The age at which unreduced Social Security benefits are payable ranges from 65 to 67, depending on the individual's date of birth. 42 U.S.C. § 416(l)(1). The Supplement begins and ends at age 62. (Plan § 3A.11(e)(1) (R. Doc. 1 at 45).) Accordingly, subdivision (A) is met.

**2.      The Supplement Satisfies Subdivision (B) of the Regulatory Definition for an Unprotected Social Security Supplement**

Subdivision (B) defines an unprotected social security supplement as one that does not exceed "old-age insurance benefit[s]," unreduced on account of age, i.e., payable at a participant's normal social security retirement age (age 65 to 67). Plaintiffs contend that because the Supplement is calculated based upon *estimated* Social Security benefits, it could conceivably exceed the regular, unreduced on account of age Social Security benefit.

The Plan provides that the Supplement

> equals the estimated primary Social Security retirement benefit that would be payable to the Participant commencing at age 62 (as determined for this purpose by the actuary for the Plan) based on the Participant's compensation received from the Company in the Plan Year preceding the Plan Year in which the Participant's Severance From Service Date occurs and by estimating the Participant's past wages assuming annual increases equal to the rise in the National Average Wage.

(Plan § 3A.11(e)(1) (R. Doc. 1 at 45).)

The Supplement is based on a participant's estimated Social Security benefit at age 62, which is actuarially reduced from the full, unreduced Social Security benefit payable at ages 65 to 67. The SPD states, that in certain circumstances, the Supplement may be higher or lower that the Social Security benefit a participant subsequently becomes entitled to receive:

> The calculated Supplement is not intended to be an accurate estimate of the actual benefit you will receive from Social Security. If you had gaps in your employment or if your salary growth differed from the nation as a whole or if you earn future wages for Social Security purposes after you leave [the Company], your actual Social Security benefit could be higher or lower than the Supplement provided by the Plan.

(R. Doc. 2 at 195.) Thus, because the Supplement is determined before the Social Security Administration calculates a participant's actual Social Security benefit, the Plan must estimate the amount of a participant's Social Security benefit, and then apply the actuarial reduction to determine an estimated Social Security benefit payable at age 62.

In finding that the Supplement satisfies subdivision (B) despite the fact that it is only an estimation, the Committee noted, inter alia, that: (1) because the Supplement is calculated years before a participant is entitled to his or her full Social Security benefit, the Plan cannot use actual Social Security benefits, but may only calculate an estimated value; and (2) because the Supplement is based on the actuarially *reduced* Social Security benefit payable at age 62, it is unlikely that the Supplement would ever exceed a participant's unreduced Social Security benefit payable at normal social security retirement age, viz. ages 65 to 67.

Plaintiffs argue that the fact that it is unlikely that the Supplement would ever

-18-

exceed a participant's unreduced Social Security benefit payable at normal retirement age does not obviate the possibility of it occurring. Therefore, Plaintiffs contend that because it is possible that the Supplement could exceed the benefit actually payable to a participant upon normal social security retirement age, subdivision (B) cannot be satisfied.

While Plaintiffs may be correct that in a particular circumstance the Supplement may not be less than the full Social Security benefit, Plaintiffs have not shown that is the case here. Defendants, however, point out that for individuals born between 1945 and 1948, like Plaintiffs, an unreduced Social Security benefit is payable at age 66 and the actuarial reduction for the age 62 benefit is 25%. (Defs.' Mem. in Supp. at 7.) That is, the benefit at age 62 is 25% less than the benefit paid at age 66. This actuarial reduction should assure that even though the Supplement is based on estimated amounts, the amount of the Supplement will be less than the full Social Security benefit. By contrast, Plaintiffs have not argued that the Supplements as payable *to them* exceed their full, unreduced Social Security benefits. They have presented no calculations whatsoever.

Moreover, the legislative history indicates that Congress did not intend social security supplements to be protected from the anti-cutback rule. When ERISA was amended in 1984 to add "retirement type subsidy" as a kind of benefit protected from amendment, Congress noted that

> The term "retirement-type subsidy" is to be defined by treasury regulations. The committee intends that under these regulations, a subsidy that continues after retirement is generally to be

> considered a retirement-type subsidy. The committee expects,
> however, that a qualified disability benefit, a medical benefit, *a*
> *social security supplement*, a death benefit (including life
> insurance), or a plant shutdown benefit (that does not continue
> after retirement age) will not be considered a retirement-type
> subsidy.

S. Rep. No. 98-575, at 30 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 2547, 2576. By definition,

a social security supplement must be paid and therefore calculated before an individual is

entitled to his or her full Social Security benefit. In fact, as noted by the Committee, the IRS has

approved the use of estimated Social Security benefits in an analogous situation. *See* Rev. Rul.

84-45 (approving the use of estimated benefits in the context of a plan benefit formula integrated

with Social Security benefits).

 Given all of the above, and Plaintiffs' failure to cite any case law in support of

their position, the Court finds that Plaintiffs have failed to establish that the Committee's finding

-- that the Supplement is not a retirement-type subsidy and therefore it was not unlawful for

Defendants to eliminate it via amendment -- is "'without reason, unsupported by substantial

evidence or erroneous as a matter of law.'" *Kinstler*, 181 F.3d at 249 (quoting *Pagan v. NYNEX*

*Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)).

 **C.**   *Plaintiffs Were Properly Notified of the Amendment*

 Plaintiffs contend that Defendants failed to provide them with proper notification

of the amendment as required by section 104(b) of ERISA. Section 104(b) provides that a plan

administrator is required to give participants a summary description of a material modification to

the terms of a plan "not later than 210 days after the end of the plan year in which the change is adopted." 29 U.S.C. § 1024(b)(1)(B). Here, Defendants notified Plaintiffs via e-mail on February 25, 2004 that because they had all received and accepted offers of employment from OneBeacon, they would not be eligible to receive the Supplement. The Plan was amended on May 12, 2004, effective retroactively as of February 1, 2004. Defendants did not send out any further notices, assuming that the February 2004 notice was sufficient.

Although Plaintiffs do not dispute that they received individual notice on February 25, 2004, they argue that this notice was *prior* to the amendment of the Plan. Thus, they contend that by failing to provide Plaintiffs with notice *after* the Plan amendment, Defendants failed to notify Plaintiffs "not later than 210 days after the end of the plan year in which the change is adopted." 29 U.S.C. § 1024(b)(1)(B). Plaintiffs cite no authority for their position.

The amendment was adopted in May 2004, effective February 1, 2004. The governing regulations provide that "a modification does not occur before it is adopted." 29 C.F.R. § 2520.104b-3(a). Using the May 2004 adoption date, Defendants had 210 days from the Plan's year end of December 31, 2004 to notify Plaintiffs of the change. Here, notice of the amendment was sent to Plaintiffs in February 2004, which is no later than "210 days after the end of the plan year in which the change is adopted." 29 U.S.C. § 1024(b)(1)(B). Although Plaintiffs are correct that they received notice of the amendment prior to its actual adoption date, there is nothing in the statute or the regulations indicating that notice must be received pre-

adoption.  Rather, § 104(b) merely requires that Plaintiffs received notice within 210 days of December 31, 2004, i.e., by the end of July 2005.

Even assuming arguendo that Defendants violated section 104 by providing notice to Plaintiffs prior to their adoption of the amendment, Defendants' error would not give rise to a substantive remedy.  In this regard, both Plaintiffs and Defendants cite *Veilleux v. Atochem N. Am., Inc.*, 929 F.2d 74 (2d Cir. 1991), where the Second Circuit found that in order to recover benefits for a violation of ERISA's disclosure requirements, a plaintiff must demonstrate a "substantive harm" that "sufficiently taint[s]" the denial of benefits "so as to warrant a finding that [the denial] was arbitrary and capricious and grant the benefits."  *Id.* at 76 (citations and internal quotation marks omitted).  In *Veilleux*, plaintiffs were former employees of Pennwalt Corporation ("Pennwalt").  *Id.* at 75.  When Pennwalt sold the division wherein plaintiffs worked to Fisons Corporation ("Fisons"), Plaintiffs were offered and accepted positions with Fisons.  *Id.*  Thereafter, Pennwalt replaced its policy with a new one which directly affected plaintiffs' severance pay.  Although the Second Circuit found that Pennwalt violated ERISA's disclosure requirements by failing, inter alia, to distribute replacement policy to plaintiffs, the court found that plaintiffs had failed to show a substantive harm resulting from the violations:

> [Plaintiffs] have failed to offer any evidence to support their assertion that had they been aware of Pennwalt's severance policy they would have chosen to forgo employment with Fisons and accept the severance pay. . . .  Therefore they have demonstrated no cognizable prejudice from Pennwalt's failure to fully comply

with ERISA's disclosure requirements . . . .

*Id.* at 76.

In the instant case, Plaintiffs do not and cannot assert that they did not know that accepting a job at OneBeacon meant they would not receive the Supplement. They were expressly notified of this fact. Moreover, as in *Veilleux*, they have failed to offer any evidence as to how a second, post-adoption notification would have altered their decisions. Accordingly, the Court finds that even if Defendants had failed to comply with the notice provision in section 104, any such failure did not result in prejudice to Plaintiffs which would support a grant of substantive relief.[6]

> **D.** **_The Plan Administrator Properly_**
> **_Interpreted the Amendment to Apply to Plaintiffs_**

The amendment passed by the Board at its May 12, 2004 meeting stated, in part, that "the Plan's Social Security Supplement benefit will be made unavailable to Participants who transferred employment to OneBeacon or to the private law firm." (R. Doc. 38.) Plaintiffs argue that their move to OneBeacon was not a "transfer" of employment and that therefore the amendment does not apply to them. They base this argument on the fact that they were hired by

---

[6] Plaintiffs' moving papers also make passing reference to another notification provision in ERISA, to wit, section 204(h), 29 U.S.C. § 1054(h). (*See* Pls.' Mem. in Supp. at 12.) However, Plaintiffs cite to an old version of the statute that has since been amended in 2001. *See* Pub. L. No. 107-16. Moreover, Plaintiffs' brief contains no argument as to why or how this section has been violated. Finally, although Defendants, in their opposition papers to Plaintiffs' cross-motion, explain why this section is inapplicable to the Supplement (*see* Defs.' Mem. in Opp'n at 10-11), Plaintiffs offer no response in their reply papers. Accordingly, the Court will not address this section.

OneBeacon rather than transferred.[7]

Defendants do not dispute that Plaintiffs terminated employment with the Company and were hired by OneBeacon. Rather, they claim that it is a distinction without a difference. The Court agrees.

It is clear from the record, including the minutes of the Board's February 9, 2004 meeting, that in connection with the sale of a portion of the Company's operations to OneBeacon, the Company negotiated that certain employees, including Plaintiffs, continue their employment at OneBeacon. It is also clear that as a result of these negotiations and the fact that Plaintiffs did indeed procure work at OneBeacon, Defendants decided Plaintiffs would no longer be eligible for the Supplement. Indeed, on February 25, 2004, Defendants notified Plaintiffs, via e-mail, that as a result of their move to OneBeacon, which the Company viewed as "a continuation of employment rather than a termination" (R. Docs. 5-12), Plaintiffs would not be eligible for the Supplement. Under these circumstances, it cannot be said that the Plan Administrator acted in an arbitrary and capricious manner in concluding that Plaintiffs "transferred employment to OneBeacon" within the meaning of the amendment.

### E.     *Plaintiffs Have Cited No Basis for Establishing Estoppel*

Plaintiffs' final argument is based on estoppel. "[P]rinciples of estoppel can

---

[7] Plaintiffs contend that there were no contractual arrangements between the Company and OneBeacon indicating that Plaintiffs' employment was guaranteed to continue at OneBeacon and that Defendants have proffered no agreement between the Company and OneBeacon regarding the "transfer" of Plaintiffs.

apply in ERISA cases under extraordinary circumstances." *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 78 (2d Cir. 1996). A plaintiff must establish the following four elements to succeed on a claim of promissory estoppel: "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." *Id.* at 79; *see also Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 85 (2d Cir. 2001) (same). "Additionally, an ERISA plaintiff must adduce not only facts sufficient to support the four basic elements of promissory estoppel, but facts sufficient to satisfy an "extraordinary circumstances" requirement as well. *Devlin*, 274 F.3d at 85 (citations and internal quotation marks omitted).

Plaintiffs argue that Defendants should be estopped from denying them the Supplement based on: (1) the fact that at the time Plaintiffs accepted employment from OneBeacon, the Plan's SPD made no mention of elimination of the Supplement; and (2) a letter that was allegedly sent to Plaintiffs on March 5, 2004, attached as Exhibit B to Plaintiffs' Local Rule 56.1 Statement, indicating that Plaintiffs were vested employees entitled to the Supplement. As far as the former, Defendants do not deny that when Plaintiffs accepted employment at OneBeacon, Plan documents describing the Supplement did not reflect the amendment eliminating the Supplement. However, Defendants point out that Plaintiffs "cannot credibly argue[] that they relied on these documents because they received personal, specific information about their situation describing the amendment eliminating the Supplement and the effect it would have if they accepted employment with OneBeacon" (Defs.' Mem. in Opp'n at 13), via e-mail on February 24, 2004. The Court agrees.

As far as the alleged March 5, 2004 letter, the record reflects that on November 3, 2003, the Company sent all employees a document entitled "Notice of Retirement Plan Changes/Summary of Material Modifications." (R. Doc. 23 at 275.) This document provided that effective January 1, 2004, the Plan would be amended to eliminate the Supplement except for participants who met certain vesting requirements. There is no dispute that Plaintiffs met these requirements. Plaintiffs, however, proffer a letter dated March 5, 2004, from Martha Van Hise, Human Resources, to all Company employees, attaching the November 3, 2003 Notice. Plaintiffs claim that subsequent to the February 25, 2004 e-mails, Defendants sent Plaintiffs this March 5, 2004 letter, with the November 2003 Notice attached, giving Plaintiffs the impression that as long as they met the vesting requirements set forth in the November 2003 Notice, they would be eligible for the Supplement. Plaintiffs' argument is flawed.

Defendants submit the declaration of Martha Van Hise wherein she explains as follows:

> The March 5, 2004 letter attached as Exhibit B to Plaintiffs' Rule
> 56.1 Statement . . . was actually sent by e-mail to participants in
> the Plan on or about November 10, 2003. It was not sent on March
> 5, 2004. Because of the word processing software with which the
> letter was typed, the current date appears on the letter when it is
> printed. The letter was sent to participants by e-mail, and when it
> is printed from the e-mail, the current date appears. The
> November 10, 2003 e-mail, letter, and attachments as sent to Plan
> participants are included in the Administrative Record at [pages]
> 265, 274-282. Because of the automatic dating feature, the letter
> in the Administrative Record is dated April 18, 2006.

(Second Decl. of Martha Van Hise, dated June 13, 2007, ¶ 2.) Plaintiffs do not address Ms. Van

Hise's declaration.  Instead, they erroneously assert that Defendants fail to address the March 5, 2004 letter in their papers.  (*See* Pls.' Reply at 9-10.)

The Court finds that Plaintiffs' Exhibit B is insufficient, by itself, to create an issue of fact as to estoppel.  As an initial matter, Plaintiffs have failed to counter Ms. Van Hise's statement, which is corroborated by the record, which contains a letter identical to the March 5, 2004 letter, but dated April 18, 2006.  Moreover, even if Plaintiffs had received notice on March 5, 2004 indicating that the Supplement would only be available to participants, like Plaintiffs, who met certain vesting requirements, they could not have reasonably relied on any such letter given that they had already been expressly advised that they were ineligible for the Supplement. Finally, Plaintiffs have wholly failed to allege any facts which would demonstrate the "extraordinary circumstances" that would warrant the application of estoppel in these circumstances.  Accordingly, the Court finds that Plaintiffs have failed to raise a genuine issue of material fact on the issue of estoppel.

## CONCLUSION

For the foregoing reasons, both Plaintiffs' and Defendants' motions for summary judgment are GRANTED IN PART AND DENIED IN PART.  The Court finds that Defendants' denial of benefits was arbitrary and capricious only to the extent that they eliminated the Supplement retroactively to February 2004; otherwise the Court finds that Defendants' decision to eliminate the Supplement was not arbitrary and capricious.  The parties are hereby directed to submit a proposed judgment within 30 days of the date of this Memorandum and Order.  Upon

entry of judgment, the Clerk shall close this case.

**SO ORDERED.**

Dated: Central Islip, N.Y.
        January 30, 2008

                                   /s
                                   Denis R. Hurley,
                                   United States District Judge